**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES._

**August 13, 2020**

# In the Court of Appeals of Georgia

A20A1433. STEWART v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Antonio Stewart on a charge of armed robbery. On appeal, Stewart contends that the trial court erred by allowing a forensic biologist with the Georgia Bureau of Investigation to testify that DNA evidence linked him to the crime. Specifically, he argues that such testimony violated his right to confrontation because the witness at trial was not the same biologist who performed the testing on the DNA sample. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that around 5:30 a.m. on November 20, 2012, Pauifi Savea was getting ready to leave for his job at a nearby chemical plant. As he often did on mornings when the weather

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

was cold, Savea went outside, started his truck, and went back inside his house to allow the vehicle to warm up. A few minutes later, as Savea walked outside toward his truck, two men—one wearing an orange mask, the other one wearing a camouflage mask, and both armed with shotguns—approached and ordered him to lay on the ground. Savea complied, at which point one of the men took a book bag Savea was carrying while the other began searching his truck. Next, the two men stole Savea's wallet, which contained $300, as well as his iPhone. Then, after patting him down further, the men ordered Savea to get up and walk back toward his house. Initially, Savea complied, but upon hearing the men's fleeing footsteps, he turned and saw that they were running toward a vehicle parked on the side of the street. And determined to prevent their escape, Savea jumped into his still-running truck, pulled out of his driveway, and blocked the culprits' vehicle. The two men began yelling at Savea to get out of the way; and fearing that he was about to be shot, he started backing up his truck. But a moment later, he stepped on the accelerator and rammed the culprits' vehicle, rendering it inoperable. The two men then fled on foot, but due to the damage from the collision, Savea could not exit his truck quickly enough to pursue them.

2

Shortly thereafter, two police officers received a dispatch regarding an armed robbery. And upon arriving on the scene, the officers began taking a statement from Savea and searching the suspects' abandoned vehicle. In doing so, the officers discovered that the vehicle was registered to Shalicia Taylor. They also recovered several shotgun shells, the packaging for a fleece mask, several types of cards belonging to a person named Henry Wilkins, and three fairly recent traffic citations issued to Antonio Taylor. Then, while the investigation at the scene was ongoing, the officers received a call from one of Savea's neighbors, who lived a few streets away. The neighbor informed the officers that—while letting her dogs out that morning—she found a cap, some gloves, a shotgun, and an iPhone discarded in her back yard. One of the responding officers then went to the neighbor's house and collected the items, which also included a mask, from the place in the yard where they had been discarded.

That same day, the detective assigned to investigate the robbery learned that Shalicia Taylor—the apparent owner of the vehicle driven by the culprits—worked at a local Walmart. The detective went to the retailer and met with its asset-protection manager to determine if the mask recovered earlier had been purchased there. And based on a "Universal Product Code" on the mask's packaging, the asset-protection

manager confirmed the mask had, in fact, been purchased at that Walmart store and the discarded gloves were also purchased as part of the same transaction two days before the robbery. Additionally, from that same UPC code, the asset-protection manager determined the time of the purchase and the specific cash register for the transaction. And, armed with this information, the asset-protection manager provided the detective with surveillance footage, which showed Stewart as the purchaser of the items. The detective ultimately arrested Stewart, obtained a warrant to collect a DNA sample from him, and sent that sample to the GBI, which—following analysis by a forensic biologist—reported that it matched the DNA samples collected from the recovered mask.

Thereafter, the State charged Stewart, via indictment, with one count of armed robbery and one count of possession of a firearm during the commission of a felony. But prior to trial, Stewart moved to suppress the testimony of a GBI forensic biologist, who the State was proffering to testify that the DNA evidence linked Stewart to the crime. Specifically, Stewart argued that such testimony violated his right to confrontation because the biologist the State was presenting at trial was not the same forensic biologist who performed the testing on the DNA samples collected from Stewart and the mask. The State filed a response, and the trial court held a

hearing on the issue just prior to the jury being empaneled to try the case. And following argument from both parties, the court ruled that the GBI forensic biologist's testimony regarding the DNA analysis was admissible and, thus, denied Stewart's motion to suppress.

The case then proceeded to trial, during which the State presented the aforementioned evidence. Additionally, the GBI forensic biologist testified regarding her review of a former co-worker's analysis of the DNA samples, stating that she agreed with the former co-worker's conclusion that the sample taken from the mask recovered near the crime scene matched the sample collected from Stewart. But despite allowing this testimony, the trial court excluded the original forensic biologist's written report, finding that it constituted hearsay and violated Stewart's confrontation rights. In his defense, the only witness Stewart called was his father, who testified that Stewart was ill on the day of the armed robbery and remained at home the entire day. Nevertheless, after the close of the evidence, the jury found Stewart guilty of armed robbery but not guilty of possession of a firearm during the commission of a felony. Thereafter, Stewart obtained new counsel and filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

In his sole enumeration of error, Stewart contends the trial court erred in allowing the GBI forensic biologist to testify that the DNA evidence linked him to the crime, arguing that such testimony violated his Sixth Amendment right to confrontation[2] because the witness at trial was not the same forensic biologist who performed the testing on the DNA samples.[3] We disagree.

In *Bullcoming v. New Mexico*,[4] the State of New Mexico introduced a forensic lab report certifying that a DUI defendant's blood-alcohol concentration was above the legal limit, but the scientist who generated and signed the report had since been "placed on unpaid leave for an undisclosed reason," and the prosecution did not call

---

[2] *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."); *see also* Ga. Const. art. 1, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person.").

[3] Although Stewart has not challenged the sufficiency of the evidence supporting his convictions, we have reviewed the record and find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of the crime of which he was convicted. *See Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.").

[4] 564 U.S. 647 (131 SCt. 2705, 180 LE2d 610) (2011).

him as a witness.[5] Rather, the prosecution called a different scientist who "had neither observed nor reviewed [the original scientist's] analysis," nor reached an independent conclusion about it.[6] As a result, the Supreme Court of the United States ruled that the "surrogate testimony" of the second scientist was insufficient to satisfy the Confrontation Clause.[7] Nevertheless, Georgia's appellate courts have "consistently held that the Confrontation Clause does not require the analyst who actually completed the forensic testing used against a defendant to testify at trial."[8] And while the Supreme Court of Georgia expressly recognizes the condemnation in *Bullcoming* of "surrogate testimony," it nonetheless has construed *Bullcoming* as not requiring the exclusion of a substitute witness who "is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue."[9]

---

[5] *Id*. at 659 (II).

[6] *Id*. at 655 (I) (B).

[7] *Id*. at 662 (II) (B).

[8] *Leger v. State*, 291 Ga. 584, 592 (5) (732 SE2d 53) (2012); *accord Disharoon v. State*, 291 Ga. 45, 46 (727 SE2d 465) (2012); *Sanchious v. State*, 351 Ga. App. 611, 615 (1) (a) (831 SE2d 843) (2019); *Thomas v. State*, 342 Ga. App. 310, 314 (2) (803 SE2d 131) (2017).

[9] *Disharoon v. State*, 291 Ga. at 48 (punctuation omitted); *accord Sanchious*, 351 Ga. App. at 615 (1) (a); *Thomas*, 342 Ga. App. at 314 (2); *see Leger*, 291 Ga. at 593 (5) (holding that because witness was the supervisor of the testing, had

In this matter, although the forensic biologist did not directly supervise her former co-worker's analysis of the DNA samples, she did conduct an *extensive* peer review of that analysis. Indeed, she testified to reviewing all of her former co-worker's notes, procedures, and results "at every step." She further testified to checking the instrument case files to ensure the controls worked and that her analysis of the co-worker's results matched the conclusions he reached in his final report. She also explained that she conducted this peer review of her former colleague's work shortly after his initial analysis. Moreover, she noted that her review was not merely a rubber stamp but was conducted so as to allow her to reach her own independent conclusions. Given these circumstances, the reviewing forensic biologist's testimony was sufficient to satisfy the Confrontation Clause and not the sort of "surrogate testimony" forbidden by *Bullcoming*.[10] Accordingly, the trial court did not err in

significant personal connection to the test, interpreted the data, performed the statistical analysis, and prepared the test report, the witness's testimony did not run afoul of *Bullcoming*).

[10] *See Leger*, 291 Ga. at 592-93 (5) (holding that scientist who did not personally perform DNA tests, but supervised worker who did, interpreted worker's results, and wrote lab report, could testify at trial); *Sanchious*, 351 Ga. App. at 615-16 (1) (a) (finding that trial court's admission of testimony from forensic biologist about the DNA testing performed by different analyst did not violate defendant's Confrontation Clause rights because biologist conducted complete peer review of analyst's report, including examining analyst's notes and results but reaching her own

8

ruling this testimony admissible and, therefore, in denying Stewart's motion to suppress.

For all these reasons, we affirm Stewart's conviction and the denial of his motion for new trial.

*Judgment affirmed. Rickman and Brown, JJ., concur.*

---

conclusion); *Thomas*, 342 Ga. App. at 314-15 (2) (holding that forensic chemist's testimony did not violate defendant's Confrontation Clause rights given that chemist explained the procedures the first chemist followed, inspected the testing instruments she had used, analyzed the data, determined the data appeared to be reliable, and reached her own conclusion regarding the tested substance); *Estrada v. State*, 319 Ga. App. 762, 765-66 (3) (738 SE2d 344) (2013) (concluding that supervisor of analyst who performed lab testing could testify because he reviewed analyst's work to determine whether it had been performed correctly and whether he agreed with it).